**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF PUERTO RICO**

**GLADYS GARCIA-RUBIERA, et al.**

**Plaintiffs,**

**v.**

**HONORABLE LUIS G. FORTUÑO, et al.**

**Defendants.**

**Civil No. 02-1179 (GAG)**

**OPINION AND ORDER**

Plaintiffs, registered motor vehicle owners in the Commonwealth of Puerto Rico ("Plaintiffs"), bring this action pursuant to 42 U.S.C. Section 1983. They allege that the Governor of Puerto Rico and Secretary of Treasury of Puerto Rico ("the Secretary") (collectively, "Defendants") violated the Due Process Clause of the Fourteenth Amendment and the Takings Clause of the Fifth Amendment by accepting the transfer of certain insurance premiums generated by the Commonwealth's compulsory motor vehicle insurance law. The Secretary and the Governor acted pursuant to Act No. 230 of September 21, 2002 ("Law 230") and Act No. 414 of September 22, 2004 ("Law 414"), both codified at P.R. Laws Ann. tit. 26, §8055(l). Plaintiffs seek declaratory and injunctive relief.

Presently before the court is Plaintiffs' motion for summary judgment (Docket No. 214). Defendants' opposed this motion (Docket No. 238). After reviewing the pleadings and pertinent law, the court **DENIES** Plaintiffs' motion for summary judgment.

**I. Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is

genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

## II. Relevant Factual & Procedural Background

Given that this court's prior opinion (Docket No. 120) amply sets forth the background of this case, only the facts relevant to the instant disposition are hereby recapitulated. The Commonwealth of Puerto Rico's Compulsory Motor Vehicle Liability Insurance Act, Act No. 253, as amended ("Law 253"), codified at P.R. Laws Ann. tit. 26, §§ 8051-8061, requires liability insurance coverage for all motor vehicles that travel on public thoroughfares. Asociación de Subscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 6 (1st Cir. 2007). Every vehicle owner in Puerto Rico must either: (1) pay the premium for

compulsory liability insurance to the Secretary at the time he or she acquires or renews a vehicle license, effectively as part of the license payment; or (2) opt-out of the compulsory liability insurance scheme by privately purchasing liability insurance with comparable or better coverage. Id. at 7. Notwithstanding the opt-out option, many vehicle owners who obtain private insurance also pay the compulsory insurance premium. Id.

The Secretary periodically forwards to the Compulsory Liability Joint Underwriting Association of Puerto Rico ("JUA")[1] all compulsory insurance liability premiums received. P.R. Laws Ann. tit. 26, §8055(c).[2] JUA holds the transferred premiums in a separate account denominated "the Reserve." Id. at 8.

On September 11, 2002, the Puerto Rico Legislature enacted Law 230, codified at P.R. Laws Ann. tit 26, §8055 (l). Law 230 requires JUA to transfer to the Secretary all funds held in the Reserve every two years to balance the Commonwealth's budget. See García-Rubiera v. Calderón, 570 F.3d 443, 449 (1st Cir. 2009). The Secretary is required to keep these funds in a fiduciary capacity for a period of five years, to be reimbursed to owners of privately insured motor vehicles and their insurers who seek refunds, after which time the funds become the property of the Commonwealth and pass to the general fund of the Commonwealth Treasury ("General Fund"). Flores Galarza, 484 F.3d at 9-10. Pursuant to the terms of Law 230, a system of reimbursement of

---

[1] The Compulsory Liability Joint Underwriting Association of Puerto Rico ("JUA") is "composed of all private insurers. Each one of the private insurers shall be a member of the [JUA] as a condition to continue offering any type of insurance in Puerto Rico." P.R. Laws Ann. tit. 26, §8055(a).

[2] "The Joint Underwriting Association shall receive the total amount of the compulsory liability insurance premiums from the Secretary of the Treasury for its eventual distribution between private insurers and the Joint Underwriting Association itself, as proper." P.R. Laws Ann. tit. 26, §8055(c).

the duplicate premiums known as Procedure 96 was approved by the Secretary of the Treasury in April 2003. (See Docket No. 215 ¶ 40.) On September 22, 2004 Law 253 was further amended by Law 414, which allowed the Commonwealth to use more funds transferred by JUA to balance the 2004-2005 fiscal year budget. In any event that the claims for reimbursement exceeded the amount available in the trust, the balance would be transferred from the General Fund. (See Docket 215 ¶ 41.)

On February 6, 2002, in anticipation of the enactment of Law 230, Plaintiffs –motor vehicle owners who purchased private liability insurance but also paid the compulsory insurance premium– filed a complaint in district court seeking equitable relief and damages under 42 U.S.C. Section 1983. Plaintiffs had not sought reimbursement from the Secretary through Procedure No. 96. See García-Rubiera, 570 F.3d at 450. In their amended complaint, Plaintiffs asserted a property interest in the duplicate premiums and the interest they generate.[3] Plaintiffs also sought to certify a class. The Governor and the Secretary each moved to dismiss the claims. Plaintiffs opposed, and moved separately for a preliminary injunction and class certification.

On August 30, 2007, this court dismissed as unripe the takings claim with respect to the duplicate premiums, since Plaintiffs had not availed themselves of the administrative remedy under Procedure 96. Id. at 451. The order also dismissed Plaintiffs' damages claims against the Secretary and the Governor in their personal capacities, finding that both were entitled to qualified immunity. Id. The court further denied preliminary injunctive relief that would have prevented the Commonwealth from taking title to those duplicate premiums transferred in September 2002, which were scheduled to escheat to the Commonwealth in September 2007. Id. The district court, however, granted a preliminary injunction, later made permanent, that enjoined Defendants from depositing into the General Fund any interest generated by the duplicate premium. Id. The motion

[3] On December 24, 2004, Plaintiffs amended the complaint after the district court dismissed the original complaint without prejudice on standing and ripeness grounds on February 9, 2004. (See Docket Nos. 33, 34 & 39.)

for class certification was denied. Id.

On appeal, the First Circuit held that: (1) as to the duplicate premiums, Plaintiffs' takings claim for declaratory and injunctive relief was ripe despite their failure to utilize Procedure 96; (2) amendments to liability insurance law facially failed to provide owners notice of transfer of funds to Secretary, in violation of due process, and remanded to determine whether the amendments' transfer provisions constituted sufficient deprivation to owners who paid duplicate premiums so as to violate due process; and (3) class certification was appropriate. Accordingly, the case was certified as a class action following remand. (See Docket No. 151.) Plaintiffs now move for summary judgment on their declaratory and injunctive relief claims based on the alleged violations of the Fifth and Fourteenth Amendments to the United States Constitution. (See Docket No. 214.)

**III. Legal Analysis**

**A. Section 1983 Claim**

Plaintiffs bring claims under 42 U.S.C. Section 1983 alleging violations of the Fifth and Fourteenth Amendments to the United States Constitution. Section 1983 creates a remedy for those who are deprived of the rights, privileges, or immunities granted to them by the Constitution or laws of the United States. See Rodríguez García v. Municipality of Caguas, 354 F.3d 91, 99 (1st Cir. 2004) (citing Baker v. McCollan, 443 U.S. 137, 144 n. 3, (1979). To succeed in a Section 1983 claim, Plaintiffs must prove that someone has deprived them of a right protected by the Constitution or the laws of the United States and the perpetrator acted under color of state law. Cruz-Erazo v. Rivera-Montañez, 212 F.3d 617, 621 (1st Cir. 2000).

**1. Fourteenth Amendment Due Process Claims**

The Due Process Clause protects against deprivation of life, liberty, or property without the due process of law. U.S. Const. amend. XIV. This due process guarantee has both procedural and substantive aspects. See Parker v. Hurley, 514 F.3d 87, 101 (1st Cir. 2008). Plaintiffs bring claims alleging violations of both their substantive and procedural due process rights under the Fourteenth Amendment. Plaintiffs argue that summary judgment should be granted on said claims. Defendants oppose the motion.

**a. Substantive Due Process**

Plaintiffs claim that Law 230 deprives them of their substantive due process rights because "[i]t takes private property of the [P]laintiffs, which was in the hands of a private debtor, pending reimbursement to the [P]laintiffs, and transfers it to the control, appropriation and use of the government without any compelling or valid justification." (See Docket No. 214-1.)

"The test for determining whether a statute satisfies the requirements of substantive due process depends on the nature of the rights the statute affects." Metropolitan Property and Cas. Ins. Co. v. Insolvency Fund, 811 F. Supp. 54, 57 (D.R.I. 1993). Social and economic legislation that does not implicate fundamental rights enjoys a presumption of constitutionality. Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15 (1976). Said presumption casts a heavy burden on the party challenging it "to establish that the legislature has acted in an arbitrary and irrational way." Id. Legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations. Id. at 16. Courts review economic legislation "with great deference to the legislature's policies, viewing the legislature rather than the judiciary as best suited to the making of economic policy." Tenoco Oil Co., Inc. v. Dept. of Consumer Affairs, 876 F.2d 1013, 1021 (1st Cir. 1989). An economic regulation "is unconstitutional only if arbitrary, discriminatory, or demonstrably irrelevant to the policy the Legislature is free to adopt." Nebbia v. New York, 291 U.S. 502, 539 (1934). For the legislation to be upheld, there needs to be a rational relationship between the statute and a legitimate government interest. Id. at 537.

In the case at bar, Law 230 and Law 414 were enacted to ease the cash-flow problem the Commonwealth was facing and balance the fiscal budget. See Garcia-Rubiera, 570 F. 3d at 447. Both laws constitute economic legislation subject to rational scrutiny, and therefore enjoy a presumption of constitutionality. See U.S. Fire Insurance, 853 F. Supp. 47 (D.P.R. 1994). As this court stated in its previous opinion (Docket No. 120) "the Commonwealth's actions in transferring and using the funds, whatever their merit, is certainly rational, serving the legitimate end of

balancing the budget."[4]

The court reiterates its findings, and holds that Law 230 and Law 414 are rationally related to the Commonwealth's legitimate interest of balancing the budget and alleviating its cash-flow problem. Further, both laws serve this interest in a rational manner. Plaintiffs have failed to demonstrate that Law 230 and Law 414 are arbitrary or irrational. Therefore, Plaintiffs have failed to show a substantive due process violation.

**b. Procedural Due Process**

Plaintiffs argue that their procedural due process rights were violated because they were deprived of their property interest in the duplicate premiums when those premiums were transferred from the JUA to the Secretary without prior notice. (See Docket No. 214-1 at 33.) Plaintiffs contend that because Law 230 does not require the publishing of the names and information of the funds in JUA's possession before the transfer to the Secretary, it deprives them of notice "to know that they had funds that they could easily recover from the insurance companies, and move to recover before it was too late." (See Docket No. 214-1 at 34 ¶ 6 & 7.) On appeal, the First Circuit found that Plaintiffs had sufficient property interest in the duplicate premiums for purposes of due process, but remanded to determine whether the transfers to the Secretary constitute sufficient deprivation of that property interest to require notice under the Due Process Clause. See García-Rubiera, 570 F.3d at 455.

Due process requires that prior to a deprivation of life, liberty, or property the individual being deprived of said interest be given notice and an opportunity for a hearing. See U.S. v. James Daniel Good Real Property, 510 U.S. 43, 48 (1993). "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protections of liberty and property." Board of Regents v. Roth, 408 U.S. 564, 569 (1972). To succeed on a

---

[4] The Court was referring to the Equal Protection claim. Nevertheless, the test and standard of review under [substantive due process and equal protection] are the same. See Broadwell v. Municipality of San Juan, 312 F. Supp. 2d 132 (D.P.R. 2004) (citing United States v. Carolene Products, Co., 304 U.S. 144, 152-153 (1938)).

procedural due process claim, Plaintiffs must show that they were deprived of a life, liberty, or property interest without the requisite minimum measure of procedural protection warranted under the circumstances. See Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 32 (1st Cir. 1996). Accordingly, Plaintiffs must first establish two threshold requirements before they are entitled to notice under the Due Process Clause. García-Rubiera, 570 F.3d at 457. First, Plaintiffs must "demonstrate the implication of a constitutionally protected interest in life, liberty, or property." Id. Then they must "show that 'the defendants, acting under color of state law, *deprived* [them] of that property interest without constitutionally adequate process." Id. (citations omitted). Because the First Circuit found that Plaintiffs have demonstrated a constitutionally protected interest in the duplicate premiums, the court turns to the second part of the analysis.

In this case, the alleged deprivation caused by Law 230 is "the transfer of property held by one party to a *different* party and the imposition of a different (and allegedly more onerous) reimbursement procedure." Id. (emphasis in original). According to the First Circuit, "[t]he transfers only result in a change of trustee." Id. at 458. The Supreme Court has held that prior to a decree of actual abandonment, a statute compelling the summary substitution of the state as the debtor will not deprive creditors of their property. See Anderson National Bank v. Luckett, 321 U.S. 233, 241 (1944) (holding that "subject to the requirements of procedural due process, that prior to a judicial decree of actual abandonment, the depositors will not be deprived of their property by the surrender of their bank accounts to the state"). Such a substitution of debtors does not deprive creditors of their rights as creditors. It preserves their right "to demand from the state payment of the [duplicate premiums], and their right to resort to the courts if payment is refused." Id. at 241-242. In the case at bar, Plaintiffs have failed to show that the Commonwealth is treating the monies as abandoned property or that they have been deprived of their rights as creditors.

As to the imposition of a different reimbursement procedure, Plaintiffs argue that Procedure 96 is a much more onerous procedure because of the formalities the vehicle owners who paid duplicate premiums need to comply with before they will be able to recover the premiums. They allege that Procedure 96 takes more "time and effort to comply with" because it "requires various

steps, several forms to be filled out and several documents to be filed." (See Docket No. 214-1 at 34 ¶ 5.) Absent a persuasive showing that these formalities will, in fact, be more onerous than those which would or could be properly required by JUA, or that the Commonwealth will be less able or less willing to pay, it cannot be assumed that the mere substitution of the state as the debtor will deprive the depositors of their property, or impose on them an unconstitutional burden. See Anderson Bank, 321 U.S. at 242.

To demonstrate the onerous nature of Procedure 96, Plaintiffs' reference the documentation required to comply with Procedure 96.[5] None of Plaintiffs' provided evidence demonstrates that the "onerous" nature of Procedure 96 sufficiently deprived them of their property interest in the duplicate premiums. Furthermore, Plaintiffs are unable to show that the Commonwealth will be less able or less willing to pay. The General Fund's subsidiary obligation to respond for the reimbursements of the duplicate premiums should the funds be insufficient (see Docket No. 215 ¶ 41) acts as an adequate safeguard for the payment of said premiums by the Commonwealth.

For the reasons stated above, this court cannot find that the transfer of funds from JUA to the Secretary constitutes sufficient deprivation of Plaintiffs' property interest in the duplicate premiums. Accordingly, the Court **DENIES** Plaintiff's motion for summary judgment on Plaintiffs' Fourteenth Amendment due process claims.

**2. Fifth Amendment Takings Claim**

Plaintiffs argue that Law 230 violates the Takings Clause of the Fifth Amendment as

---

[5] "The insured shell [sic] process the claim through the Public Insurances Area through Model SC 4601, Request for Compulsory Insurance Reimbursement . . . . It shall be available on the Internet or at the Collection Offices . . . . Said model shall be attached with the following information: (a) Copy of the Motor Vehicle License for which the reimbursement is being claimed; (b) Copy of the insurance policy. This policy shall be for each year claimed; (c) In the case that the insurance company is the one making the claim, it must attach certified copies of the policies for which it is claiming; (d) Certification of the payment of the policy for each year claimed. This Certification shall be issued by the insurance company; (e) Certification that the insurance company has not received a reimbursement from [JUA] nor has reimbursed to the insured the Obligatory Liability Insurance premium." (See Docket No. 218-1.)

incorporated in the Due Process Clause of the Fourteenth Amendment. (See Docket No. 214.) They allege that the Commonwealth took physical possession of the duplicate premiums, which the Plaintiffs had property interest in, for public use, and created an "onerous administrative procedure" that did not provide for awarding interest for Plaintiffs to claim reimbursement. (See Docket No. 214 at 30.) This court previously held that Plaintiffs' claim with respect to the duplicate premiums was unripe because of their refusal to pursue the administrative remedy under Procedure 96. (See Docket No. 120.) The First Circuit reversed on these grounds holding that the just compensation prong did not apply in this case because the taking involved the direct appropriation of funds, and therefore held the claim was ripe. See García-Rubiera, 570 F.3d at 454.

The Takings Clause of the Fifth Amendment prohibits the government from taking property without just compensation. See Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 175 n. 1 (1985). This prohibition applies to the states through the Fourteenth Amendment. See Chicago, B. & Q. R. Co. v. Chicago, 166 U.S. 226 (1897). The Takings Clause "does not prohibit the taking of private property, but instead places a condition on the exercise of that power." First English Evangelical Lutheran Church of Glendale v. Cnty. of L.A., 482 U.S. 304, 314 (1987). "[I]t proscribes taking without just compensation." Brown v. Legal Found. of Wash., 538 U.S. 216, 235 (2003) (quoting Williamson Cnty. Reg'l Planning Comm'n, 473 U.S. at 194). It is not designed "to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." First English Evangelical Lutheran Church, 482 U.S. at 315 (emphasis in original).

The Fifth Amendment imposes two conditions on the exercise of the State's authority to confiscate private property: (1) the taking must be for a "public use"; and (2) "just compensation" must be paid to the owner. Brown, 538 U.S. at 232-233. The present case satisfies the first condition. The duplicate premiums in controversy were used by the Commonwealth to balance the budget. (See Docket No. 215 ¶ 41.) Since the end of the 19th century, the Supreme Court has adopted the "natural interpretation of public use as 'public purpose.'" Kelo v. City of New London, Conn., 545 U.S. 469, 480 (2005). The balancing of the budget falls within the scope of this

definition.

As for the second condition, the Fifth Amendment's 'just compensation' requirement "is measured by the property owner's loss rather than the government's gain." Brown, 538 U.S. at 236. The Court looks at what Plaintiffs lost in the present case. Pursuant to Law 230 and Law 414, the duplicate premiums are transferred every two years. Once the transfer of funds occurs, the Secretary keeps them in a fiduciary capacity for a period of five years. After this five year period the funds become the property of the Commonwealth and pass to the General Fund of the Commonwealth Treasury. See Flores Galarza, 484 F.3d at 9-10. The duplicate premiums are not considered property of the Commonwealth until the seven year escheat period runs its course. Brown, 538 U.S. at 236. The Legislature acknowledges that the duplicate premiums are not "unclaimed funds." (See Docket No. 215 ¶ 31.) Consequently, Plaintiffs have seven years to request full reimbursement before said premiums are considered abandoned in accordance with Puerto Rico law.

Law 230 and Law 414 merely require said premiums to be transferred from JUA to the Secretary. A mere transfer of principal "does not effect a confiscation." Brown, 538 U.S. at 234. Neither act deprives Plaintiffs of the money they paid as duplicate premiums. Plaintiffs' property rights over the duplicate premiums remains unaltered post-transfer. Further, prior to the transfer, Plaintiffs did not have possession of said funds as they were under the control of JUA subject to reimbursement. The income generated by the duplicate premiums no longer reverts to the General Fund of the Commonwealth as it accrues.[6] Moreover, Law 230 provides a mechanism to prevent any economic loss (Procedure 96). In light of these findings, there is nothing in the record to show that the transfer of duplicate premiums from JUA to the Secretary resulted in a loss for the

---

[6] This court enjoined "[t]he Secretary and the Governor, their agents, or anyone acting in concert with them or pursuant to their orders . . . from depositing in the General Fund any interest generated by the [d]uplicate [p]remiums held in a custodial capacity by the Secretary." (See Docket No. 120 at 18.) A "constitutionally adequate statutory or regulatory scheme" was ordered to deal with the interest. Id.

Plaintiffs.[7] Therefore in this case, "even if there was technically a taking . . . [n]othing [is] recoverable as just compensation, because nothing of value was taken from the [Plaintiffs]; and it was not subjected by the Government to pecuniary loss." Brown, 538 U.S. at 236 (quoting Marion & Rye Valley R.R. Co. v. United States, 270 U.S. 280, 282 (1926)). Plaintiffs have failed to show that the transfer of funds and the laws that mandate said transfer resulted in any pecuniary loss that entitles them to compensation. See Brown, 538 U.S. at 237 (holding that petitioners were not entitled to any compensation for non-pecuniary consequences of a taking and that any pecuniary compensation must be measured by their net losses rather than the value of the public's gain.)

The court finds that because Plaintiffs have failed to show the existence of any pecuniary loss, they are unable to demonstrate their right to just compensation under the law. Therefore, the Court **DENIES** Plaintiff's motion for summary judgment as to their Fifth Amendment Takings claim.

## IV. Conclusion

For the foregoing reasons, the court **DENIES** Plaintiffs' motion for summary judgment (Docket No. 214).

**SO ORDERED**

In San Juan, Puerto Rico this 15th day of November, 2010.

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge

---

[7] Plaintiffs do not show that their economic situation has been altered after the transfer. When Plaintiffs refer to the more "onerous administrative procedure," they refer to "the costs in efforts and time." (See Docket No. 214 at 30.)